Good morning. May it please the court, Paul Workman on behalf of Appellant Wyatt Technology Corporation. I would like to reserve five minutes for rebuttal, please. Your Honors, reversal of the trial court grant of summary judgment in this case is necessary to avoid a miscarriage of justice. The victim here is the appellant, Wyatt Technology Corporation. In 2004, it invested tens of thousands of dollars to acquire the assets of a company, Proterion. Problem is it listed exactly what assets it was buying instead of saying all assets, and it didn't get the license to use this particular process. Isn't that right? That's not correct, Your Honor. It isn't? OK, educate me. Well, there was a November 2004 asset purchase agreement that was admittedly vague. And what was covered by that agreement were hard assets, including the equipment of the business that Wyatt contends was converted, and also the Proterion.com domain name. What was not clear was what intangible property, including trademarks and trade names, were included. That matter was cleared up in a January amendment to the agreement, which specifically covered the Dynapro and the Protein Solutions trademarks and trade names, and also the exclusive right to continue the business of Proterion and to hold itself out as the successor to the Proterion business. So the agreements are admittedly a bit unclear, but the only reasonable inferences to give the agreements is that Wyatt got the assets of the business, it got the intellectual property of the business, and it got the exclusive right to hold itself out as the successor to the business. Counsel, it would be helpful to me if we went through each one of the claims separately, because for some of them I think there were material issues of fact, and some of them I do not believe there were. So could we go through each one of them? I think you're discussing the trademark infringement claim right now, is that right? Well, I think there are two parts of the case. There are the counterclaims brought by the defendants based on the computer fraud statutes. And those are the claims that resulted in the imposition of punitive damages and attorney's fees in excess of $300,000. I understand, but I'm talking about your claims at this point. Those claims consist mainly of conversion and trademark infringement. So are you ceding your arguments on the other claims? Are you saying that summary judgment was appropriate on the other claims then? No, we don't agree that summary judgment was appropriate on the other claims. But because of the problems with the presentation of the evidence in the trial court, our position is that the arguments being made on appeal with respect to the conversion claim and the interference with trademark are far more clear in merit reversal. I agree with you that those are your strongest claims. But let me ask you about the false description claim. Why is there an issue of fact on that claim? What issue of fact was raised by your client in that claim? The allegation was that the defendants held themselves out as the only company that was legally permitted to make repairs to the DynaPro machine. The DynaPro was the machine that was made by Proterion. Proterion was the company that was bought by Wyatt. The defendants held themselves out on their website and in advertising materials stating that they were the only ones who were legally entitled to make repairs to that machine. I understand the allegation now. And put me in the record to where you raised an issue of fact regarding that. There was no evidence brought forward and supported by the defendants in support of the summary judgment motion that that statement was true. Wait, you still have to show some evidence yourself. Not if the, if, not, and this is really, I think, a fundamental point in this case. So you've got the burden of proof when you accuse them of doing that. So summary judgment law requires your evidence. But Your Honor. And I understood it, the judge couldn't find it. And now Judge Rawlinson has asked you. But Your Honor, our position is, and I'll point to this. Our position is that the moving party has to meet its burden of production. I understand that's your position. But it's not the Supreme Court's position. In Celotex, Anderson Lobby, and Matsushita, they say the burden is on the party that will have the burden of proof to show evidence that can satisfy its burden of proof. All the party making the motion for summary judgment has to do is point and say, where's your evidence? That's, Your Honor, with all due respect, we do not believe that is the law. The law, we believe, is properly stated in Nissan Fire and Marine versus Fritz 210F3, 1099, 1102, 1103. The moving party must come forward with evidence that shows that there are no disputed issues of fact, and that they are entitled to summary judgment as a matter of law. So you stand or fall on whether it's the moving party's obligation or the obligation of the party with the burden of proof to show evidence? Yes, to come forward in the first instance with evidence. In other words, a moving party can't come forward and provide no evidence, and then put the responding party to the burden of coming forward to proving their case. We think that is fundamentally not the law. OK. And that's entirely the problem here. Just the reason in the trial court felt that Wyatt had not come forward in compliance with local rules and properly identified record to your argument is, even if he's right, it doesn't matter because they made the motion. That is precisely our argument, that if you simply look at the underlying evidence that the defendants to support their summary judgment motion, what you will find are undisputed facts, which led to incorrect legal rulings. Or you will find a fundamental failure to establish the point that they were asserting in their statement of undisputed facts. That is fundamentally the case. The running through the district court's rulings and comments were that you never really pointed out where your evidence was in the various documents that you would refer vaguely to depositions, but not pinpoint things. You felt that you were not helping the court to put this case together. At least that's the way I read his. You read the order correctly, Your Honor. That was what we believe led, though, to Judge Trebrizion's error, which was not to look at the evidence behind the defendants' claimed undisputed facts to see if there was evidence supporting them. Our position is that even if Wyatt had presented no evidence, it still should have led to a denial of the summary judgment motion, at least on the computer fraud statute claims and on Wyatt's affirmative claims for conversion and for interference with its trademark rights. For example, on the computer fraud statute, there was really no disagreement on what the underlying facts were as presented by the defendants. Now, those facts were mischaracterized in the defendants' moving papers, wherein they contended that what Wyatt had done was scour the hard drive of this pro-Turian computer to find Mr. Cunningham's password, and then to use that password to, in effect, wiretap into Mr. Cunningham's personal e-mail account. But also, if there's no dispute on the facts, isn't that a classic example of where summary judgment is appropriate if you don't dispute the facts? And on the computer fraud statute cases, we believe that summary judgment is appropriate in Wyatt's favor because those facts are not sufficient to make out violations of these computer fraud statutes. But if we disagree with you, summary judgment is appropriate. If we disagree with you on the legal analysis, you agree that summary judgment is appropriate, regardless of which party is entitled to it. On the computer fraud statutes, that is our position, ma'am. At one point, in order to monitor Cunningham, you sped up the times at which you would look for his e-mails so that he couldn't delete them before you got an opportunity to read them. At that point, you knew that this was his personal e-mail account. Correct, Your Honor. And you're asserting that you had the absolute right to look at his once you knew that it was really privileged material? Our position is, Your Honor, that to violate these statutes, there has to be some affirmative action taken that bypasses technical barriers to the information or some express prohibition, for example, a contract that limits access to the information. Here, there was neither. Cunningham disabled the security on his computer. Cunningham did that. He was using his work computer at Procterian to access his personal e-mail account. I understand that. Was it an affirmative act when you sped up your capacity to monitor it? Because that was an outlook function. That wasn't an affirmative act to bypass security, because there was no security. Our point is that you can't have a violation of these statutes unless you take some affirmative step to bypass security, to go where you're not supposed to go. He's wound up. What case supports that? I know that we're all in this area moving into areas where there isn't much definitive case law, but do you have any cases which say that? We don't have definitive case law. The two cases that we think are the closest are Health Care Advisors v. Harding, 497 F2nd 627. That's an Eastern District of Pennsylvania case. And in that case, a law firm doing pretrial discovery accessed information on a website that was protected, but the protection was not in effect due to a technical glitch. There was no authorization by the holder of the information for that access. And the issue was, was that lack of consent or authorization sufficient to bring the law firm's conduct within the statute? And the court said no, because you don't have an intentional affirmative step to bypass a technical barrier. The technical barrier was down. It wasn't working. The law firm got lucky. If my radio happens to pick up the cell phone conversations of the lawyer next door, then I can set up a tape recorder and record all those cell phone conversations with impunity. Is that right? Whether there is some tortuous violation of a Privacy Act, I don't know, Your Honor. That's different from the situation here. I mean, in your case. Well, here what happened is you got the physical laptop. Let me speak to that. You got the physical laptop, and it had not been sufficiently purged to prevent you from using it to get into the account of your adversary. Right. In your analogy, Your Honor, your picking up of that information would not be a violation. In other words, your inadvertent accessing of your neighbor's telephone conversation would not be criminal. Now, whether you tape it and use it. The circuit courts had said that it was. Just listen to that. I think our court said in a case called Chandler that it was. That just listening in or the tape recording of it? That was listening in and tape recording on an extension. Well, that's wiretapping. Yeah. But that's different from the situation here. I mean, here this is a computer that is sitting, that they bought. They turn on. They don't do anything to bypass security. And all of a sudden, you've got all of Cunningham's emails sitting there. Your Honor, I see I'm nearly out of time. Thank you, counsel. Counsel, though. Sorry, go ahead. Good morning. May it please the court. Jeffrey Miller of Lewis, Briscoe, Biscard, and Smith on behalf of defendants and appellees. Do you have a question? Yes, I do. The one part of your case I don't really understand, I think, is the Lanham Act part about the trademark claim. Could you just lay it out orally, or maybe I'll be able to understand it. Well, Your Honor, the district court. I don't understand why there isn't a genuine issue on the Lanham Act. There is none, Your Honor. The Lanham Act, the one that we hear the most, is relating to the domain name. And what's interesting here in the sale, it's not a sale of the business. It's only the sale of certain assets. In fact, there were other buyers of different assets. So the agreement was important because it set forth what it was to buy. The domain name is nowhere included in any of the agreements. Therefore, when they bought the assets they purported to buy, they did not buy the domain name. It was always in the ownership of Mr. Smithson. But isn't there an issue of fact because Mr. Smithson was reimbursed for registering that domain name? He was reimbursed by the company. So doesn't that raise an issue of fact regarding who actually owned the domain name? Your Honor, as far as I'm aware, there is no authority that says because he was reimbursed that he was owned the domain name and that that makes much of a difference at all. There's no case law that I'm aware of. And I don't. That becomes an issue of law, whether or not there is case law that says that. But doesn't that raise a question? I mean, if your company reimburses you for something you buy, doesn't that raise a question of fact whether or not you actually own it or the company owns it because they bought and paid for it? Well, Your Honor, at that time, of course, Mr. Smithson and the company were basically one and the same. It was then purchased by another entity that did not own the name. That makes it even more questionable. If he and the company are one and the same, then why didn't he buy it on behalf of the company? Or register it on behalf of the company? He bought it, Your Honor, because it was his entity and he had it all along. And then it became a situation where the other company came in. That's a question of fact in my mind. But the other question I have for you is, did the district court err in requiring that the claims be brought under the Cyber Squadron Act as opposed to the Atlanta Act? Absolutely not. Why not? It was not because the, actually, the traffic was absolutely correct. Normally, this kind of action is brought under the Anti-Cyber Squadron Consumer Protection Act. But Plaintiff could not make a showing under that because you require bad faith. And you couldn't have bad faith because he owned the mark. Let me ask you, why couldn't it be brought under the Lanham Act, though? Because, Your Honor, the requirement under the Lanham Act requires a specific showing of use in commerce. And we don't have any evidence of that in this case. It was presented definitively in the evidence presented by the defense. I didn't understand that part of the argument. Why wasn't it used in commerce? If you advertise on the internet for business using a name? It was not an advertisement on that, Your Honor. It never branded. It never said, we are selling this particular product on the internet. It did not happen. First of all, they owned the domain name, as I said. And the evidence showed that there was no marketing of the product. Now, we have to look at the other side and see what evidence was presented in opposition. And there was nothing. There was no triable issue of fact in any way relating to that. So because there was no use in commerce, that particular argument did not go. You started out by saying that this domain name was not listed or purchased. Correct. Was it just floating around out there? It was owned by Mr. Smithson at all times, at all times. Your Honor, going back to the issue that was mentioned relating to the cross-claims, and that is the Trespass Act. Before we go there, could you go to the conversion claim? Sure. Your Honor, what we're dealing with here, and I think this point I'm about to make is extremely important, and Your Honor had alluded to it. When we're talking about a typical summary judgment, the key is that we're looking, obviously, at de novo review. But we have a definitive problem procedurally in this case, and it affects what we're talking about here. And that is when a party is opposing a summary judgment, they have to direct the trial court to the particular evidence, including the page and line number under the OR case. That's O-R-R. But even also as a problem procedurally in this case is that arguments have to be raised. If you don't think a summary judgment should be presented, you have to make the argument, legal argument, below. Well, counsel, as a trial court judge, you also have the responsibility to make sure that summary judgment is warranted as a matter of law. So there are two parts of it. The litigants have a role to play, and the judge also has a role to play. The judge doesn't have to scour the record, but the judge has a responsibility to at least look at the record, to read the record, to make sure whether or not, as a matter of law, summary judgment is appropriate. So the judge doesn't just sit there. The judge also has a part, a role to play. That's correct, Your Honor. But with the volume of documents, this circuit is very clear in summary judgments of this magnitude that you have to direct the party. Getting directly to your question on the conversion, there is undisputed evidence here, excerpts of record 346, that the items that were in question, that were pled as being converted, were provided to Wyatt. Were returned, were provided to Wyatt. They were provided to Wyatt. Returned, right? Your Honor, you have to look at the factual scenario here as well. The situation that existed was obviously that at the time Forterian was breaking up, they had possession of the documents in a lawful manner. The issue is when it was given or provided to this based upon the agreement. There was evidence presented on the issue of the conversion that those documents were given to them. The issue now became, what do you have to show that there was a conversion to raise a tribal issue of fact? And this is where I go into this failure to direct the court. What they presented was exhibit 16 through 29. That's in quotation marks. With no explanation on how those exhibits created a tribal issue of fact. As a result, the court was absolutely correct and there was no tribal issue in relation to the conversion. Counsel, could you walk me through the scenario of how the items, it wasn't just documents, there were items as well. Yes. So walk me through the scenario of how those items were returned to the company. What happened? We have to go through the sequence of what the record says, Your Honor. What does the record say? The record is that the evidence was presented showing that these items were provided to Wyatt, the same items that were pled. I mean, how? And were they demanded to be returned and then returned? Or they just one day walked in and said, here are some items that belong to Wyatt? How did it happen under the record? I don't have any specifics here, Your Honor, but I think they were part of the process. This case emanated from these emails. I thought what they said was that items were not returned because some employees who had not been paid took them. And then there was joking on the eaves dropped on email about the assets that were supposedly taken. Did I misunderstand that? I don't recall the exact piece of evidence on that, Your Honor. But the very simple evidentiary showing made was that the documents were presented to them. They were the same documents listed as being converted. Not just documents. I'm sorry, that's incorrect, Your Honor. We should call them items. We can call them tools, a number of items. And they were listed. What was interesting, again, is that it was pled those items. And those items in the evidence in support of the motion showed that they were presented to them. So they belong to them. Maybe you could be a little more specific. You've mentioned documents, and you've mentioned items. Maybe you could talk concretely about what it is that we're talking about. Your Honor, they were tools. They were various technical. You mean like Torx screwdrivers? Yes, there were things, a computer, various items of that nature. As I understand the record, these were not returned until the lawsuit was started? In that vicinity, yes. So counsel, wouldn't that show a question of fact? I mean, just because you return something doesn't mean that you didn't convert it in the first instance. So wouldn't that show a question of fact if they were not returned until demanded? Wouldn't that raise a question of fact regarding the existence of conversion? If there was evidence presented of that, which was not. Again, it was 16 through 29 was what was refuted in the summary judgment motion on the affirmative showing made. Counsel, if the record is undisputed that the items were in the possession of the ex-employees and they were demanded to be returned, doesn't that raise a question of fact whether or not they had the authority to have them? You don't have to go to exhibit 16 through 29 to raise a question of fact if the facts themselves show that there is a question regarding who had authority to have those items. On this record, I don't think you can say there was a showing of an intentional conversion or act indicating the taking of something when they had, as part of their previous job, they had those items. It's not like you're breaking into a house and taking somebody else's property, per se. They've been using these items all along. And you need to show some type of an intentional act of conversion on the part of the plaintiffs here, Wyatt, to show that there was an action to take that property. The emails joking about it at least raises a question of fact regarding whether or not they had those legitimately. If you work for a company and the company goes out of business or you no longer work for that company, you give the company its equipment back. That's common sense. I don't think that does, Your Honor, because of, again, the sequence of the summary judgment showing that we've done here. The failure to show to the trial court the specific evidence. If you look at the conversion statement in the points and authorities, it doesn't even talk about it. I thought the district court found that there was conversion, but there was no damages. Am I wrong in that? It found there was no conversion. That's correct, Your Honor. No, it found it was conversion. I thought they said there was no damages because they returned the items. It found that there was a failure to show the elements of conversion because that the items were not wrongfully taken. With putting the record, where is that finding in the record? I'm referring to the separate statement, Your Honor, and the order itself. Where in the order did the district court judge say there was no conversion? It's in the order, Your Honor. I don't have the order right here. But I'm asking you where. You said they didn't give line, specific page and line. Now I'm asking you for a specific page and line. Your Honor, I don't have the order in front of me at this present time to give you the exact page. This case puzzled me. I couldn't find the thing. I get a whole lot of arguments that don't quite meet. I can't find anything in the record. I can summarize that for you, Your Honor. No, I don't want a summary. I want to read it and underline it and put a yellow sticky on it or a blue sticky on it. Your Honor, let me try to focus on the cross complaint, on the cross claims. This is as to the email messages. The problem here, there was a clear violation of the computer trespass statutes because there was a intentional access of those. Let me ask you something about that. Yes. It's funny having 100,000 impunitives and zero compensatories. Especially funny in light of what the Supreme Court's doing lately on punitives. But I was mystified about why there wasn't 1,000 in statutory minimum compensatory damages for each eavesdropping. And there was about one per minute, I think. That's correct, Your Honor. Two hours of eavesdropping and more than $100,000. That's correct, Your Honor. So I must be missing something. Your case must be weaker than I thought. No, Your Honor. The reason you're struggling here is the same reason the district court was struggling with it expressed in that order. Arguments that you're hearing today were not argued to the district court. On your counterpoint? On both sides of this equation, on the counterpoint. Let me give an example on your punitive damages, for example, Your Honor. The arguments relating to there's no damages, because there's hardly any damages, there shouldn't be punitive damages. Well, but the district court did not order any compensatory damages. I don't know. The district court ordered that found that there was a finding that would attribute to the $5,000 under the one act. He didn't award it, though. He did state that they would be entitled to injury, or there were injuries for violation of that statute. Let me toss out something. This is just me talking. We don't confer before the argument. I have no idea what my colleagues think. To me, the case looks like a mess. To me, it looks like there's a Lanham Act violation by your side, clears the bell. It looks to me like there's this computer statute violation, clears the bell by the other side, with statutory damages far, far in excess of the punitives that were awarded. And no real justification for not awarding the huge statutory damages plus punitives. It looks like both sides' presentations are kind of hard to figure out, especially at the district court level. I would have been just helpless if I'd still been a district judge. Let me finish. If we remand, which would be the consequence if I'm right about my speculative suppositions here, then you're likely to get a huge number that you owe them and a huge number that they owe you. I have no idea which way it all comes out at the end. Is it worth submitting this case, withdrawing it, not submitting it right away, giving you time to decide if you want to mediate it? We have a very good mediation service. That was going through my mind as I was plowing through all this stuff for some considerable period of time. I can't speak for my client. Well, we would give you time. Neither side should have to commit itself. That would be, in other words, before your disposition. Yeah. Were you contacted by our mediation service? Did you do any pre-mediation? Not that I know of, no. I just think you get hammered on the trademark a lot harder than you were, which was nothing. And they get hammered for the eavesdropping a whole lot harder than they were. And where it all comes out, who gets hammered the most, I don't know. And the district court judge is gone, so it would be a new district court judge. So actually, we three judges probably have some different views on different issues, but we all have a lot of problems with a lot of the issues. I think that's a fair characterization. It looks like I spoke for all of us more than I thought. If I can leave you with this, again, and that's why I began my discussion with it, the problem comes down to the presentation below on the opposition relating to the issues and the facts. If we remand, then it's Katie, bar the door. Everybody can do a better job of getting their ducks in a row. With that, thank you, Your Honor. Thank you, counsel. We should ask the other side if they're interested in mediation. Yes. And you don't have to commit yourselves today. You have to talk to your clients about something that's important. Your Honor, I believe that there was at least a telephone conference with a Ninth Circuit mediator in this case. It was handled by trial counsel. I am not entirely sure what became of that effort, and certainly would be happy to discuss with the Wyatt family whether they would be interested in mediating. Thank you, counsel. May I be heard on any of these issues, Your Honor, or is my time up? You went over your time. OK, Your Honor. Thank you, counsel. Thank you. Wyatt Technologies versus Smithson is submitted. Or maybe don't submit it. Oh, I'm sorry. I misspoke. It is not submitted. We'll decide whether to submit it, whether and when. Do you want to signify anything before that? If you all ought to be talking to your clients about what we said, and if you find it useful to let them listen to our arguments, you can buy tapes. If not, don't. Just whatever you want. And we'll eventually send out an order submitting it, not submitting it. Or giving you time to confer and advise back as to whether you're willing to mediate. Thank you, counsel. Next is United States versus Factel.
judges: Fletcher, Kleinfeld, Rawlinson